**In re DEBRA B.**

Supreme Judicial Court of Maine.
Argued June 13, 1985.
Decided July 11, 1985.

Cloutier, Joyce, Dumas & David, Paul R. Dumas, Jr. (orally), Rumford, for plaintiff.

Preti, Flaherty & Beliveau, Albert J. Beliveau, Jr., Franklin A. Poe (orally), Rumford, for defendant.

Before NICHOLS, ROBERTS, VIOLETTE, WATHEN, GLASSMAN and SCOLNIK, JJ.

SCOLNIK, Justice.

Debra B. appeals from a judgment of the Superior Court affirming the District Court's order granting her mother's petition for a determination that sterilization is in Debra's best interest. On appeal, Debra contends that the petitioner did not prove by clear and convincing evidence that sterilization is in her best interest, as the Due Process in Sterilization Act requires.[1] We have carefully reviewed all the evidence that was before the District Court, and we agree with Debra that, on this record, the court could not reasonably have been persuaded that the necessary conclusions were proved to be highly probable. Accordingly, the petition was improperly granted and we vacate the judgment.

I.

Debra B. is now twenty-six years old and lives with her parents, who are also her guardians. She is moderately retarded, with a "cognitive age" of four to seven, depending on the task she is called upon to perform. She has no understanding of sexual functioning, procreation, or contracep-

tion. However, she is physically mature and, according to the petition, she has "expressed a desire for sexual relations."

The District Court appointed counsel to represent Debra, as required by 34–B M.R.S.A. §§ 7008(1), 7013(2). After three hearings the court determined (i) that Debra is unable to give her informed consent to sterilization, 34–B M.R.S.A. § 7005(2),[2] and (ii) that sterilization is in her best interest. 34–B M.R.S.A. § 7013(5). The Superior Court affirmed. It held that, although the District Court had adopted verbatim the proposed factual findings submitted by counsel, a practice of which we disapproved in *In re Sabrina M.*, 460 A.2d 1009 (Me. 1983), in this case, "the findings of the District Court are not clearly erroneous and each is adequately supported by the evidence."

II.

The Due Process in Sterilization Act exists, in large measure, because of abuses historically perpetrated in the name of social welfare. *See generally, In re Grady,* 426 A.2d 467, 472–74 (N.J.1981); Burgdorf, *The Wicked Witch is Almost Dead: Buck v. Bell and the Sterilization of Handicapped Persons,* 50 Temp.L.Q. 995 (1977). The legislative intent underlying the Act recognizes that, "sterilization procedures are generally irreversible and represent potentially permanent and highly significant consequences for the patient involved. The Legislature recognizes that certain legal safeguards are necessary to prevent indiscriminate and unnecessary sterilization...." 34–B M.R.S.A. § 7002. The safeguards mandated by the Act have a common focus: to ensure that no person who is incapable of informed consent may be sterilized unless the operation is necessary to *that person's* best interests. 34–B M.R.S.A. §§ 7013(4), (5), (6).

---

1. Originally enacted by P.L.1981, c. 621. At the time of the petition and hearings the Act was codified at 34 M.R.S.A. §§ 2471 *et seq.* It was repealed and reenacted with no relevant changes by P.L.1983, c. 459, as 34–B M.R.S.A. §§ 7001 *et seq.* (Supp.1984), after the hearings

but before the District Court issued its order. For convenience we will cite to Title 34–B.

2. Debra B. does not challenge the initial finding that she is unable to give her informed consent.

The duty of determining whether sterilization is in such a person's best interests falls on the court, and not on the person's parents or guardian. 34–B M.R. S.A. § 7010. This is because "the constitutional right of reproductive autonomy is a right personal to the individual." *In re Grady*, 426 A.2d at 482, citing *Eisenstadt v. Baird*, 405 U.S. 438, 92 S.Ct. 1029, 31 L.Ed.2d 349 (1972). In the exercise of that right, "the interests of the parents of a retarded person cannot be presumed to be identical to those of the child." *In re Hayes*, 93 Wash.2d 228, 608 P.2d 635, 640 (1980). Thus a judicial determination is necessary to ensure that the child's personal right is protected. *See also, In re Grady*, 426 A.2d at 482; *Matter of C.D.M.*, 627 P.2d 607, 609, n. 3 (Alaska 1981); *A.L. v. G.R.H.*, 163 Ind.App. 636, 325 N.E.2d 501, *cert. den.* 425 U.S. 936, 96 S.Ct. 1669, 48 L.Ed.2d 178 (1975).

We do not suggest that the motivation for the petition at bar is anything other than the concern of Debra's parents for her best interests. Nonetheless, the court may make the ultimate determination only under the standards set forth in Chapter 7 of Title 34–B of the Maine Revised Statutes Annotated, in particular Section 7013. That provides, in part,

(4) The burden of proof by clear and convincing evidence that sterilization is in the best interest of the person being considered for sterilization shall rest with the party seeking to establish that sterilization is the appropriate course of action.

(5) The court shall find that sterilization is in the best interest of the person being considered for sterilization if it is shown by clear and convincing evidence that:

A. Methods of contraception less drastic than sterilization have proven to be unworkable or inappropriate for the person; and

B. Sterilization is necessary to preserve the physical or mental health of the person.

This heavy burden of proof imposed on the petitioner underscores the Legislature's intention that "the court must take great care to ensure that the incompetent's rights are jealously guarded." *Matter of C.D.M.*, 627 P.2d at 612.

III.

Where factual findings must be made on the basis of "clear and convincing evidence," an appellate court does not review them only for "clear error," as the Superior Court seems to have done here. Because "the policies that motivated the imposition of the 'clear and convincing evidence' standard apply with equal force at both the factfinding and appellate stages," the appropriate standard of review is "whether the factfinder could reasonably have been persuaded that the required factual finding was or was not proved to be *highly probable.*" *Taylor v. Commissioner of Mental Health*, 481 A.2d 139, 153 (Me.1984) (emphasis added).

Debra's first contention is that the petitioner did not prove by clear and convincing evidence that she is physiologically capable of procreation. Such capability is a sine qua non of the conclusion that sterilization is in Debra's best interest. It must be "assessed" in a medical statement contained in the sworn petition, 34–B M.R.S.A. § 7011(7), and the District Court must "hear and consider evidence on it." *Id.* at § 7013(3)(A). Absent procreative capability, sterilization *could not* be medically appropriate, let alone necessary. Therefore, the petitioner must prove clearly and convincingly that the person being considered is physiologically capable of procreation in order for the District Court to draw the conclusion required by 34–B M.R.S.A. § 7013(5)(B).[3]

3. In holding that the petitioner must prove this fact to be highly probable, we disagree with the opinion expressed in *In re Grady*, 426 A.2d at 484 and *Matter of Moe*, 385 Mass. 555, 432 N.E.2d 712, 722 (1982), that, where "the ward has reached sexual maturity, the court may presume fertility, absent medical evidence to the contrary." *Id.* The Massachusetts Supreme Ju-

Despite the requirement of Section 7011(7), the petition in this case was accompanied only by the statements of two psychologists, neither of whom was identified in the record as a physician. One reported that, "according to [Debra's physician] she is physiologically capable of procreation." The other did not mention the subject. Debra's physician testified at the hearing. On direct examination he agreed with the question, "[w]ould you describe her as a physically, sexually mature person?" Whether or not the attorney understood that question to refer to Debra's physiological capacity for procreation, the physician's response was ambiguous at best, and could as easily be interpreted to mean only that Debra is capable of sexual *activity:* "Yes sir. Her problem is one purely intellectual. She has, she is retarded intellectually, but these people do develop *emotionally* normally, so that their sexual development and *awakening* is normal." (emphasis added). With no evidence more specific than that, the District Court could not reasonably have concluded that Debra's procreative capability was highly probable.

Because that holding is dispositive of this case, we need not consider Debra's second contention, that the petitioner did not clearly and convincingly prove that alternative contraceptive methods were unworkable or medically inappropriate. However, for the guidance of the District Court in its consideration of any future petition, we respond to Debra's argument that one of the psychologists was statutorily disqualified from testifying.

Title 34–B M.R.S.A. § 7013(3) requires the District Court to appoint no fewer than three "disinterested experts" to examine the person being considered and to testify. Section 7003(2) defines a "disinterested expert" as "an appropriately licensed or certified professional not associated with an institution serving the person for whom sterilization is being sought and not personally related to the petitioner." The psychologist whose statutory qualification Debra challenges is associated with Tri-County Mental Health Services, identified in the record only as "Maine's first comprehensive mental health center serving the communities of Oxford, Franklin, and Androscoggin Counties." It apparently provides only out-patient services. Debra was seen at Tri-County by a therapist once prior to the hearings on this petition. She argues that the psychologist is thus associated with an "institution serving" her, and was ineligible to testify. The District Court rejected this contention on the basis that "institution" in 34–B M.R.S.A. § 7003(2) refers only to a residential facility, and not to a "social service agency" like Tri-County. Though we agree that the psychologist was not disqualified, we interpret Section 7003(2) to require a more flexible application consistent with the purpose of the Act as a whole.

Certainly, an expert associated with an "institution" in which the person being considered resides is within the prohibition of that section. The probability of an "institutional interest" in the person's sterilization in such a case is strong enough to warrant that *per se* rule. *See In re Peter C.,* 488 A.2d 468 (Me.1985). However, Section 7003(2) refers to an institution "serving" the person, indicating that an "institution" is not limited to a facility in which the person resides. If the expert need not be associated with a facility in which *the person being considered* resides in order to be disqualified, there is no reason that the expert could only be disqualified if associated with a facility in which *someone* resides. The word "institution,"

dicial Court reasoned that, "[b]ecause a conclusive determination of fertility may require an intrusive procedure, the judge should rarely order the ward to undergo such testing." *Id.* at n. 9. We think, however, that an unnecessary sterilization is much more intrusive than such a test. This is not to say that the District Court must order intrusive testing in every case, since the necessary proof may already exist in the medical record. In any event, the "clear and convincing evidence" standard does not require factual findings to be "conclusive." *See Addington v. Texas,* 441 U.S. 418, 430–32, 99 S.Ct. 1804, 1811–13, 60 L.Ed.2d 323 (1979).

therefore, is not limited to residential facilities.

■ Where, as here, the expert is associated with an institution other than one in which the person being considered resides, the correct inquiry is whether both the expert and his institution are sufficiently "disinterested" to fulfill the expert's function under the Act: to provide objective testimony on the issues raised by 34–B M.R.S.A. § 7013. Here, where the record contains only the suggestion of one prior out-patient visit to Tri-County, the District Court would have acted within its discretion in finding the psychologist was not disqualified under Section 7003(2).

Judgment vacated.

Remanded to the Superior Court with instructions to remand to the District Court for denial of the petition.

All concurring.

Supreme Judicial Court of Maine.