## 2002 ME 1

### Donald A. DUBOIS

v.

### MADISON PAPER CO. et al.

Supreme Judicial Court of Maine.

Argued: Sept. 10, 2001.
Decided: Jan. 4, 2002.

---

Wayne W. Whitney, (orally), McTeague, Higbee, Case, Cohen, Whitney & Toker, P.A., Topsham, for employee.

Thomas R. Kelly, (orally), Darby C. Urey, Lawrence B. Goodglass, Esq., Robinson, Kriger & McCallum, Portland, for employer.

Panel: SAUFLEY, C.J., and CLIFFORD, RUDMAN, DANA, ALEXANDER, and CALKINS, JJ.*

* Wathen, C.J., participated in the initial conference but resigned before this opinion was

CALKINS, J.

[¶ 1] The employer, Madison Paper Co., and the insurer, Liberty Mutual Insurance Co. (collectively "Madison"), appeal from a decision of a hearing officer of the Workers' Compensation Board granting the petitions of the employee, Donald Dubois, for medical and incapacity benefits. Madison contends that the hearing officer erred in rejecting the opinion of the independent medical examiner (IME) who concluded that a neck condition for which Dubois had surgery in 1999 was not caused by a 1980 work injury. We affirm the decision.

## I.  BACKGROUND

[¶ 2] Dubois was severely injured in 1980 while employed at Madison when his right arm was pulled into a paper machine and crushed. He suffered a dislocated elbow, a laceration on his face, and lost several teeth when his head was repeatedly banged against the machine. Dubois underwent two surgeries on his right arm and remained out of work for approximately one year. When he returned to employment at Madison, he performed light duty security work for two years, and then returned to his regular work.

[¶ 3] In 1998 Dubois began experiencing an incapacity to his right hand and was diagnosed with severe spinal stenosis. He underwent cervical laminectomy surgery in February 1999, and he was totally incapacitated until September 1999. Dubois returned to employment in December 1999, and he has sought compensation for the period he was out of work in 1999.

[¶ 4] Dubois was treated by a neurologist, Dr. Sanzenbacher, who concluded that Dubois' neck condition was related to

adopted.

his 1980 work injury. The hearing officer quoted from Dr. Sanzenbacher's opinion:

[Dubois] was evaluated and found to have severe cervical spondylitic changes [causing] cervical spinal cord compression. Cervical spondylosis and degenerative disk disease are common, but are not common to this extent. When such severe changes are seen there is usually a history of trauma. It is my opinion that this severe problem would not have caused cord involvement if it hadn't been for the work related injury which resulted in his head and neck being forced against the rollers.

[¶ 5] The hearing officer also relied upon the opinion of Dubois' neurosurgeon, Dr. Mehalic, that Dubois' neck condition was caused, or accelerated, by the 1980 work injury. Dr. Mehalic agreed with Dr. Sanzenbacher that Dubois' work injury contributed to his cervical stenosis and caused premature degenerative changes of the cervical spine.

[¶ 6] At Madison's request, the Workers' Compensation Board appointed an IME pursuant to 39–A M.R.S.A. § 312 (2001). The IME stated:

In summary, a review of the copy of the medical records provided to me failed to disclose any evidence of neck and radicular pain following the 1980 crush injury to Mr. Donald Dubois' right upper extremity. It is my opinion that from a practical point of view it was nearly impossible that [the] injury as described by ... Dubois which took place in 1980 could accelerate his pre-existing spondyloarthritic changes.... From all available information it seems certain that cervical problems Mr. Donald Dubois started to experience in 1998 were not causally related to his occupational activities at Madison Paper Company.

[¶ 7] The hearing officer granted Dubois' petitions and rejected the IME's evaluation. The hearing officer specifically found that the medical records and opinions of Drs. Sanzenbacher and Mehalic provided clear and convincing evidence contrary to the IME's opinion. The hearing officer found that these two doctors, whose opinions she found persuasive, based their opinions on a thorough understanding of Dubois' 1980 work injury, whereas the IME's opinion showed less familiarity with the mechanics of the injury. Additionally, the hearing officer noted that the IME stated no basis for his opinion that Dubois had "pre-existing spondyloarthritic changes." The hearing officer found that, in fact, there was no basis for this conclusion because there were no medical records of Dubois' condition before the 1980 work injury.

## II. ANALYSIS

[¶ 8] Madison's sole argument on appeal is that the hearing officer erred in rejecting the IME's opinion. The weight to be accorded to an IME's findings is prescribed by 39–A M.R.S.A. § 312(7) (2001), which provides:

If the parties agree to a medical examiner, the examiner's findings are binding. If the board assigns an independent medical examiner, the board shall adopt the medical findings of the independent medical examiner unless there is clear and convincing evidence to the contrary in the record that does not support the medical findings. Contrary evidence does not include medical evidence not considered by the independent medical examiner. The board shall state in writing the reasons for not accepting the medical findings of the independent medical examiner.

[¶ 9] This is not a case in which the parties agreed to the IME, and therefore, the IME's findings were not binding. The issue presented to us is the meaning of the phrase "clear and convincing evidence" as

it is used in section 312 and whether the hearing officer clearly erred in finding that there was clear and convincing evidence contrary to the IME's medical findings.

[¶ 10] Substantial case law exists interpreting the standard of clear and convincing evidence outside the workers' compensation context. We defined the clear and convincing standard in *Taylor v. Commissioner of Mental Health & Mental Retardation*, 481 A.2d 139 (Me.1984), as an intermediate standard under which "the party with the burden of persuasion may prevail only if he can place in the ultimate factfinder an abiding conviction that the truth of his factual contentions are highly probable." *Id.* at 153 (internal quotation marks and brackets omitted).

[¶ 11] In an appeal from a trial court's factual finding when the burden of proof is clear and convincing evidence, we look to "whether the factfinder could reasonably. have been persuaded that the required factual finding was or was not proved to be highly probable." *Id.* We have applied this standard to the review of findings made with the clear and convincing evidence burden in a variety of contexts. *E.g., In re Charles G.*, 2001 ME 3, ¶ 5, 763 A.2d 1163, 1166 (termination of parental rights); *Baizley v. Baizley*, 1999 ME 115, ¶ 8, 734 A.2d 1117, 1119 (imposition of constructive trust for constructive fraud); *Mariello v. Giguere*, 667 A.2d 588, 590 (Me.1995) (common law fraudulent misrepresentation); *Fitzgerald v. Gamester*, 658 A.2d 1065, 1070 (Me.1995) (punitive damages); *Davis v. Mitchell*, 628 A.2d 657, 661 (Me.1993) (establishment of boundary by acquiescence); *Dolloff v. Dolloff*, 593 A.2d 1044, 1045 (Me.1991) (undue influence);

*Estate of Richard*, 556 A.2d 1091, 1092 (Me.1989) (existence of will); *Lietz v. Berry*, 543 A.2d 367, 368 n. 1 (Me.1988) (mutual mistake); *In re Debra B.*, 495 A.2d 781, 783 (Me.1985) (involuntary sterilization).

[¶ 12] Madison contends that these decisions in appeals from trial courts have limited applicability to the interpretation of section 312 of the Workers' Compensation Act. It suggests that the requirement of clear and convincing evidence must be read in the context of the purpose to prevent a "battle of the experts" in workers' compensation cases.[1] Madison contends that, in order to reject the findings of an IME, the hearing officer must find that the IME's opinion is based on medical or scientific error or presents a relevant and obvious medical history error. Madison, in effect, asks us to rewrite, or reinterpret, the phrase "clear and convincing evidence" from its generally accepted meaning in legal parlance. We decline this invitation.

■ [¶ 13] The phrase "clear and convincing evidence" is a legal term of art with a well-established meaning.[2] The term is not ambiguous, and it is not necessary to go beyond the statutory language to discover its meaning. Furthermore, neither the purpose of the statute nor its legislative history compels us to adopt a unique interpretation of the phrase as it is used in section 312(7). We assume the Legislature intended the well-established meaning of a well-known term.

[¶ 14] Therefore, we look to whether the hearing officer "could reasonably have been persuaded that the required factual finding was or was not proved to be highly probable." *Taylor*, 481 A.2d at 153. For

---

1. There is evidence in the legislative record to support Madison's assertion of a legislative intent to prevent "doctor shopping," or a "battle of the experts." *See generally VII Legis. Rec.* H–34, H–61, H–69–70, H–96 (115th Legis.3d Spec.Sess.1992).

2. The "clear and convincing evidence" standard is also required to establish the compensability of mental injuries. *See* 39–A M.R.S.A. § 201(3) (2001).

purposes of section 312, this means that we determine whether the hearing officer could have been reasonably persuaded by the contrary medical evidence that it was highly probable that the record did not support the IME's medical findings.

 [¶ 15] Section 312(7) requires that the hearing officer "state in writing the reasons for not accepting the medical findings of the independent medical examiner." The hearing officer gave specific reasons for rejecting the IME's opinion and recited the clear and convincing evidence that was contrary to the IME's opinion. In addition to finding the opinions of Drs. Sanzenbacher and Mehalic[3] more persuasive than that of the IME, the hearing officer also found that the IME, in expressing his findings in his report, did not appreciate the severity of the 1980 injury. Moreover, the hearing officer found unconvincing the IME's finding that Dubois suffered pre-existing spondyloarthritic changes, when the record contained no evidence prior to the 1980 injury to support such a finding.

[¶ 16] These reasons, particularly the last reason above, were sufficient for a factfinder to reasonably determine, from the contrary medical evidence, that it was highly probable that the IME's medical findings were not supported by the record. We give deference to the findings of hearing officers, particularly with regard to medical/factual issues. *See Mathieu v. Bath Iron Works*, 667 A.2d 862, 864 (Me. 1995). The hearing officer's findings are adequate in the present case to satisfy the clear and convincing evidence standard.[4]

The entry is:

Decision of the hearing officer of the Worker's Compensation Board affirmed.

---

**3.** Section 312(7) provides that the "[c]ontrary evidence does not include medical evidence not considered by the independent medical examiner." Although Dr. Mehalic provided his opinion after the IME report, and therefore his opinion could not have been considered by the IME, Madison failed to raise this issue before the hearing officer or on appeal, and, therefore, it has not been preserved.

**4.** We reject Madison's contention that, even if the clear and convincing evidence standard is not accorded special meaning, the hearing officer misapplied the standard because she merely found the opinions of Dubois' treating doctors more persuasive.