2007 ME 94

**Tina M. HIGGINS**

v.

**H.P. HOOD, INC., et al.**

Supreme Judicial Court of Maine.

Argued: Jan. 16, 2007.
Decided: July 24, 2007.

---

Jeffrey Neil Young, Esq. (orally), McTeague, Higbee, Case, Cohen, Whitney & Toker, P.A., Topsham, for employee.

Daniel F. Gilligan, Esq. (orally), Troubh Heisler, Portland, for employer.

Panel: SAUFLEY, C.J., and CLIFFORD, ALEXANDER, CALKINS, LEVY, and SILVER, JJ.*

CLIFFORD, J.

[¶ 1] Tina M. Higgins, the employee, appeals from a decision of the Workers' Compensation Board hearing officer (*Stovall, HO* ) determining that she suffers 3% permanent impairment as a result of a 2001 work injury to her right arm, incurred while she was employed by H.P. Hood, Inc. The hearing officer relied on the opinion of an independent medical examiner to find that Higgins's permanent impairment is 3%. Higgins does not contend that pursuant to 39-A M.R.S. § 312(7) (2006) there is clear and convincing evidence to contradict the medical findings of the independent medical examiner (IME). Instead, she argues to us that the report of the IME contains so many errors that it is unreliable, and therefore it does not constitute sufficient evidence on which to base a determination of the extent of Higgins's permanent impairment. We are unpersuaded by Higgins's contentions and we affirm the decision.

[¶ 2] Higgins suffered a repetitive stress injury to her right arm while working for H.P. Hood. The compensability of her injury was established in a prior decree, dated June 20, 2002, and is not presently at issue. This appeal follows the hearing officer's decision on H.P. Hood's petition to determine the extent of Higgins's permanent impairment, and Higgins's petition for payment of medical and related expenses.

[¶ 3] Pursuant to 39-A M.R.S. § 312 (2006), two independent medical examinations were conducted for the purpose of this hearing: Dr. Mitchell Ross assessed the physical component of Higgins's injury, and Dr. Paul Genova assessed the psychological component. After the hearing, Higgins also submitted a report from her treating physician, Dr. Phillips, who practices occupational medicine, and who treated Higgins's pain with acupuncture.

[¶ 4] In the opinion of Dr. Genova, Higgins's current psychological symptoms predated the work injury, and although they are not causally connected to the work injury, they were exacerbated by it. He also stated that her condition could improve with treatment, and thus should not be considered permanent (i.e., she has not reached maximum medical improvement). He therefore did not assign any percentage of permanent impairment to the psychological component of her injury.

---

* Justice Howard H. Dana Jr. sat at oral argument and participated in the initial conference but retired before this opinion was certified.

[¶ 5] Dr. Ross gave an opinion that Higgins suffers from 3% permanent impairment as the result of her work injury. He noted in his report that she suffers from complex regional pain syndrome (CRPS), classified as type I based on her activities of daily living, that she is able to feed and dress herself, take care of her daily needs, shop, and do her hair. He also noted that she suffers from somatoform pain disorder with symptom magnification, that there is no clinical evidence of carpal tunnel syndrome, and that she has a history of depression and fibromyalgia. Dr. Ross stated in the report that he arrived at the 3% impairment level in accordance with the AMERICAN MEDICAL ASSOCIATION, GUIDES TO THE EVALUATION OF PERMANENT IMPAIRMENT (4th ed.1993) (hereinafter AMA GUIDES).[1]

[¶ 6] It was also Dr. Ross's opinion that the acupuncture treatments that Higgins underwent were not medically necessary, because Higgins reported to him that there had been no improvement as a result of those treatments.

[¶ 7] At the hearing, Higgins argued that Dr. Ross's report contains numerous inaccuracies and should be rejected on that basis. She also relied on the report and deposition of her treating physician, Dr. Phillips, which were admitted after the hearing, to argue that there is clear and convincing evidence that contradicts Dr. Ross's report, and that Dr. Ross's opinions on the permanent impairment level and the lack of necessity of the acupuncture treatments should be rejected pursuant to 39–A M.R.S. § 312(7). Dr. Phillips agrees with Dr. Ross's diagnosis of CRPS, but in his opinion, Higgins has a 20% permanent impairment due to decreased range of motion, sensory deficits, pain level, and altered activities of daily living, measured pursuant to the AMA GUIDES. Neither Dr. Genova nor Dr. Ross had the benefit of Dr. Phillips's report at the time they prepared their reports.

[¶ 8] In a decree dated December 14, 2005, the hearing officer accepted Dr. Ross's opinion as to the level of permanent impairment, and established a 3% permanent impairment rating. The hearing officer also denied the petition for payment of medical and related services for the acupuncture treatments, based on Dr. Ross's opinion.

[¶ 9] Higgins filed a petition for additional findings of fact and conclusions of law, which was denied. She then filed her petition for appellate review, in which she contended that Dr. Ross's IME report does not constitute competent evidence and does not support the findings that Higgins suffers 3% permanent impairment from the right arm injury, or that the acupuncture treatments were not medically necessary. We granted appellate review pursuant to 39–A M.R.S. § 322 (2006).

## II. LEGAL ANALYSIS

[¶ 10] The Workers' Compensation Board is required to "create, maintain and periodically validate a list of not more than 50 health care providers that it finds to be the most qualified and to be highly experienced and competent in their specific fields of expertise and in the treatment of work-related injuries to serve as independent medical examiners." 39–A M.R.S. § 312(1). Either party can request an independent medical examination on a disputed medical issue, or the Board can or-

---

1. Both the Workers' Compensation Act and the Board Rules require that the AMERICAN MEDICAL ASSOCIATION, GUIDES TO THE EVALUATION OF PERMANENT IMPAIR-MENT (4th ed.1993) be used in determining the existence and degree of permanent impairment. 39–A M.R.S. § 153(8)(A) (2006); Me. W.C.B. Rule, ch. 7, § 6(2).

der such an examination. *See* 39–A M.R.S. § 312(3).

[¶ 11] The hearing officer is required to adopt the medical findings of the IME "unless there is clear and convincing evidence to the contrary in the record." 39–A M.R.S. § 312(7). The enhanced weight given to the IME's opinion is designed "to prevent 'doctor shopping' and to reduce litigation," *Lydon v. Sprinkler Services,* 2004 ME 16, ¶ 9, 841 A.2d 793, 795, and to prevent "a battle of the experts," *Dubois v. Madison Paper Co.,* 2002 ME 1, ¶ 12 n. 1, 795 A.2d 696, 699.

[¶ 12] Because the report of Dr. Phillips was not available to Dr. Ross at the time he issued his IME report, Higgins concedes that there is no clear and convincing evidence in the record that can be considered "contrary" evidence pursuant to section 312(7). *See id.* ¶ 15 n. 3, 795 A.2d at 700 (noting that section 312(7) provides that contrary medical evidence does not include evidence not considered by the IME).

[¶ 13] Higgins contends, however, that Dr. Ross's report does not constitute competent evidence of her medical condition, and the hearing officer's finding that she suffers 3% permanent impairment is therefore not supported by competent evidence in the record. She points out the following errors and inconsistencies in the IME report, which she brought to the attention of the hearing officer, and argues they raise questions that the report even pertains to her:

- The report states that it is an "Evaluation Report on Higgins, Susan." The employee's first name is Tina.
- The report lists the employer as "Columbia Insurance." The employer in this case is H.P. Hood, and the insurer, Sentry Insurance.
- The report states that her requesting physician is "Dr. Jeff Young." Jeff Young is her attorney.

- The report states that she was treated by Dr. Mevin, when she was treated by Dr. Nevins.
- The report states that Dr. Mevens performed a bone scan, when Dr. Nevins performed a bone density test. She never underwent a bone scan.
- The report states that EMG testing was done by Dr. Phillips, when it was performed by Dr. Belden.
- Ross refers to Higgins in the report as both a "cooperative, fair historian," and as "poorly cooperative."
- Higgins also testified that Dr. Ross did not ask her about all of the activities of daily living documented in the report, including feeding and dressing herself, and that she told Dr. Ross that 90% of her day was spent in data entry, not that she did 90% of H.P. Hood's data entry.

[¶ 14] Higgins also argues that the fact that two physicians evaluating the same patient for the same medical condition reached such disparate results as to permanent impairment level (Dr. Ross, 3% and Dr. Phillips, 20%) suggests that Dr. Ross's report may not have pertained to her. She contends that Ross's report is likely a composite of her and another employee that Ross evaluated, and that it is impossible to discern what portions of the report apply to her. She further contends that because she requested specific findings of fact on this issue, and the hearing officer made no specific finding that the report pertained to Higgins, we cannot infer that the report pertains to her, and therefore, the report cannot support the hearing officer's conclusion that Higgins suffers only a 3% permanent impairment.

[¶ 15] Although it is unfortunate that there are errors in the IME report, those errors are mostly clerical, are minor, and have no substantive impact on the report's conclusion. The hearing officer was free to disregard all or part of Higgins's testi-

mony based on a credibility determination, as the record reflects that Higgins has had many disagreements with her medical providers over the years, having discharged several of them, and has exaggerated her symptoms.

[¶ 16] Higgins raised the very issue of whether the IME report does in fact pertain to her before the hearing officer. The hearing officer resolved that factual issue against Higgins. A review of the record reveals that there is no real doubt that the report pertains to Higgins. Dr. Ross did in fact examine Higgins about the extent of impairment to the right upper extremity resulting from an August 15, 2001, injury at H.P. Hood, her employer. The report is substantially accurate as to her medical history, and most importantly, identifies her as suffering from CRPS, another fact the parties do not dispute. Higgins's disagreement with Dr. Ross's IME report is based on his conclusion that her whole person impairment is 3%, as opposed to the 20% whole person impairment as found by Higgins's own physician.

[¶ 17] Higgins was aware of Dr. Ross's IME report, yet never sought to depose Dr. Ross, and did not seek an opinion from her own physician as to her permanent impairment until long after the hearing had been conducted in this case.

[¶ 18] Title 39–A M.R.S. § 318 provides:

§ 318. Hearing and decision.

The hearing officer shall hear those witnesses as may be presented or, by agreement, the claims of both parties as to the facts may be presented by affidavits. If the facts are not in dispute, the parties may file with the hearing officer an agreed statement of facts for a ruling on the applicable law. From the evidence or statements furnished, the hearing officer shall in a summary manner decide the merits of the controversy. The hearing officer's decision must be filed in the office of the board and a copy, attested by the clerk of the board, mailed promptly to all parties interested or to the attorney of record of each party. *The hearing officer's decision, in the absence of fraud, on all questions of fact is final;* but if the hearing officer expressly finds that any party has or has not sustained the party's burden of proof, that finding is considered a conclusion of law and is reviewable in accordance with section 322.

(Emphasis added.)

[¶ 19] Despite being urged to do otherwise, the hearing officer relied on the IME report and concluded that Higgins suffers from 3% whole body impairment. That report, despite several errors, constitutes competent evidence supporting the hearing officer's decision. Pursuant to section 318, that decision is final and we do not disturb it on appeal.

The entry is:

Decision of the Workers' Compensation Board hearing officer is affirmed.