STATE OF MAINE                              BUSINESS & CONSUMER DOCKET
CUMBERLAND, ss.                             DOCKET NO. BCD-CV-19-37


CORINTH PELLETS, LLC,               )
                                    )
            Plaintiff,              )
                                    )
      v.                            )         ORDER DENYING ARCH SPECIALTY
                                    )         INSURANCE CO.'s MOTION TO
ARCH SPECIALTY INSURANCE CO.,       )         DISMISS BASED ON
et al.,                             )         CONSTITUTIONAL GROUNDS
                                    )
            Defendants,             )
                                    )
and                                 )
                                    )
ATTORNEY GENERAL, STATE OF          )
MAINE, and MAINE                    )
SUPERINTENDENT OF INSURANCE,        )
                                    )
            Intervenors.            )


In response to the Second Amended Complaint dated June 11, 2019 (the "Complaint"),

Defendant Arch Specialty Insurance Co. ("Arch") brought a Motion to Dismiss on statutory

interpretation and constitutional grounds. This Court granted the Motion based on statutory

interpretation and did not address the constitutional void-for-vagueness argument. In due course

the Law Court vacated this Court's judgment based on statutory interpretation grounds and

remanded for further proceedings on the constitutional issue. *Corinth Pellets, LLC v. Arch

Specialty Insurance Co., et al.*, 2021 ME 10, __ A.3d __. The Law Court cautioned, however, that

"Arch's constitutional void-for-vagueness argument may implicate matters outside the current

record, such as how Arch and other insurers have in fact interpreted the statute." *Id.* ¶ 39.

## STANDARD OF REVIEW

1

In reviewing a motion to dismiss under Rule 12(b)(6), courts "consider the facts in the complaint as if they were admitted." *Bonney v. Stephens Mem. Hosp.*, 2011 ME 46, ¶ 16, 17 A.3d 123. The complaint is viewed "in the light most favorable to the plaintiff to determine whether it sets forth elements of a cause of action or alleges facts that would entitle the plaintiff to relief pursuant to some legal theory." *Id.* (quoting *Saunders v. Tisher*, 2006 ME 94, ¶ 8, 902 A.2d 830). "Dismissal is warranted when it appears beyond a doubt that the plaintiff is not entitled to relief under any set of facts that he might prove in support of his claim." *Id.* "The legal sufficiency of a complaint challenged pursuant to M.R. Civ. P. 12(b)(6) is a question of law" and thus subject to de novo appellate review. *Marshall v. Town of Dexter*, 2015 ME 135, ¶ 2, 125 A.3d 1141.

## DISCUSSION

The factual background of this case, based on the allegations contained in the Second Amended Complaint, is described in the Law Court's decision, 2021 ME 10, ¶¶ 4 – 9. The facts alleged are insufficient for the Court to decide the constitutional issue as a matter of law. The Court has denied Arch's request for additional briefing in light of the Law Court's decision. What is needed is not additional briefing and oral argument, but rather factual development of the record. Viewing the Second Amended Complaint in the light most favorable to Plaintiff Corinth Pellets, LLC, dismissal is not warranted at the Motion to Dismiss stage. Accordingly, Arch's Motion to Dismiss on constitutional grounds is denied.

Pursuant to M.R. Civ. P. 79(a), the Clerk is instructed to incorporate this Order by reference on the docket for this case.

So Ordered.

Dated: 4-12-2021

Michael A. Duddy
Judge, Business and Consumer Docket

2

**Corinth Pellets, LLC**                                                   **BCD-CV-2019-37**


**v.**

**Arch Specialty Insurance Co.
and Varney Agency, Inc.**


**and**

**Maine State Attorney General
Mane Superintendent of Insurance**
          (Intervenors)




**Corinth Pellets, LLC**
          Counsel:                         Eric Wycoff, Esq.
                                           Kyle Noonan, Esq.
                                           Merrill's Wharf 587 Commercial St
                                           Portland, ME 04101




**Arch Specialty Insurance Co.**
          Counsel:                         Lauren Thomas, Esq.
                                           3415 Congress Street, Suite 201
                                           Portland, ME 04101




**Varney Agency, Inc.**
          Counsel:                         Brett Leland, Esq.
                                           One Portland Square,
                                           Portland, ME 04101

**Maine State Attorney General
Maine Superintendent of Ins.**
          Counsel:                         Tom Sturtevant, Jr., AAG.
                                           111 Sewall Street
                                           6 State House Station
                                           Augusta, ME 04333

STATE OF MAINE                                  BUSINESS & CONSUMER DOCKET
CUMBERLAND, ss.                                 DOCKET NO. BCD-CV-19-37


CORINTH PELLETS, LLC,                    )
                                         )
            Plaintiff,                   )
                                         )
      v.                                 )      ORDER ENTERING FINAL
                                         )      JUDGMENT AS TO SOME BUT NOT
ARCH SPECIALTY INSURANCE CO.,            )      ALL CLAIMS PURSUANT TO M.R.
et al.,                                  )      CIV. P. 54(b)(1).
                                         )
            Defendants,                  )
                                         )
and                                      )
                                         )
ATTORNEY GENERAL, STATE OF               )
MAINE, and MAINE                         )
SUPERINTENDENT OF INSURANCE,             )
                                         )
            Intervenors.                 )


This case presents a question of first impression: Does the provision in the Surplus Lines Law governing cancellation and nonrenewal of surplus lines coverage, 24-A M.R.S. § 2009-A, require notice of nonrenewal in the absence of cancellation. This Court answered the question in the negative, and on January 23, 2020, issued two Orders (the "Orders") pursuant to M.R. Civ. P. 12(b)(6) dismissing all claims against Defendant Arch Specialty Insurance Co. ("Arch") for failure to provide notice of nonrenewal to Plaintiff Corinth Pellets, LLC ("Corinth Pellets"). Only the claims of Corinth Pellets against Defendant Varney Agency, Inc. ("Varney") remain. On February 27, 2020, pursuant to M.R. Civ. P. 54(b)(1), Arch moved for the entry of final judgment on the claims against it, on the grounds that there is no just reason for delay. Arch's motion is

1

unopposed.[1] For the reasons discussed below, the Court agrees there is no just reason for delay. Accordingly, the Court grants Arch's Motion for Entry of Final Judgment, and directs the entry of final judgment in favor of Arch on the claims against it in Corinth Pellets' Second Amended Complaint and Varney's Cross-Claim.

## STANDARD OF REVIEW

A trial court has discretion to enter a final judgment pursuant to M.R. Civ. P. 54(b)(1) as to fewer than all claims or parties in a matter, but only upon an express determination that there is no just reason for delay. *McClare v. Roche*, 2014 ME 4, ¶ 8, 86 A.3d 22. The court's determination must be supported by findings of fact, and justified by consideration of the factors set forth in *Guidi v. Town of Turner*, 2004 ME 42, ¶ 12, 845 A.2d 1189. *McClare,* 2014 ME 4, ¶8.

## FINDINGS

Construing the factual allegations contained in the Second Amended Complaint as admitted, *see Bonney v. Stephens Mem. Hosp*., 2011 ME 46, ¶ 16, 17 A.3d 123, the Court made the following findings of fact in its Orders. Corinth Pellets was formed to own and operate a wood pellet mill located in Corinth, Maine. (Pl.'s Compl. ¶ 1.) On September 19, 2018, Corinth Pellets' mill suffered a catastrophic fire which destroyed the mill's manufacturing capability and put the mill out of business for the foreseeable future. (Pl.'s Compl. ¶ 1.)

Corinth Pellets is the named insured under a surplus lines commercial property policy issued by Arch. (Pl.'s Compl. ¶ 2.) Arch issued the policy for the mill for the policy period of January 13, 2017 to January 13, 2018, and then issued three, three-month renewals of the policy with the last such renewal expiring on September 18, 2018—one day before the fire. (Pl.'s Compl.

---

[1] Initially Corinth Pellets and Varney opposed Arch's motion for entry of final judgment, but only because Varney's motion for reconsideration had not yet been decided. Neither Corinth Pellets nor Varney stated any other basis for their opposition. On March 23, 2020, this Court entered an Order denying Varney's motion for reconsideration, thereby removing the only grounds presented for opposing entry of final judgment.

2

¶ 33.) The policy covered property damage, business interruption, and extra expenses for damages arising out of a covered loss event. (Pl.'s Compl. ¶ 1.) Under the terms of the policy, the damages Corinth Pellets suffered as a result of the fire would be a covered loss event if the policy was still in effect on the date of the fire. (Pl.'s Compl. ¶ 33.)

For a number of years, Corinth Pellets retained the Varney Agency to act as its insurance agent. (Pl.'s Compl. ¶ 6.) On September 5, 2018, an employee of the Varney Agency sent an email to Corinth Pellets reporting the following:

> FYI…The current short-term policy for the building insurance is up on 9/18. The current insurance company can't extend past 9/18 as operations are running again. I have had various insurance companies quoting the past several weeks and should have quotes to review shortly. Once everything is back, we can decide which company to renew with.
>
> No need to do anything on your end… Just an FYI on what we have been doing behind the scene.

(Pl.'s Compl. ¶ 16.) This was the first time Corinth Pellets learned that Arch had elected not to renew the policy. (Pl.'s Compl. ¶ 16.) Corinth Pellets never received any written or other notice from Arch that Arch would not renew or continue the policy past September 18, 2018. (Pl.'s Compl. ¶¶ 33, 37.) The Varney Agency ultimately did not acquire property insurance for Corinth Pellets from any source to cover the mill property for the period beginning after September 18, 2018 (Pl.'s Compl. ¶ 25.)

Corinth Pellets provided timely notice to Arch of the September 19, 2018 fire at the pellet mill. (Pl.'s Compl. ¶ 45.) The fire caused approximately $15 million in damages to Corinth Pellets. (Pl.'s Compl. ¶ 31.) Arch denied coverage. (Pl.'s Compl. ¶ 46.)

**DISCUSSION**

Consideration of the factors set forth in *Guidi* supports the entry of partial final judgment in this case. *See Marquis v. Town of Kennebunk*, 2011 ME 128, ¶¶ 12-15, 36 A.3d 861.

1. The Relationship of Adjudicated and Unadjudicated Claims.

In its Second Amended Complaint, Corinth Pellets asserts two counts against Arch: Count I (Declaratory Judgment), and Count II (Breach of Contract). The Second Amended Complaint asserts six counts against Varney: Count III (Breach of Contract), Count IV (Promissory Estoppel), Count V (Negligence), Count VI (Negligent Misrepresentation), Count VII (Fraudulent Misrepresentation), and Count VIII (Breach of Fiduciary Duty). In its Cross-Claim, Varney asserts one count against Arch: Count I (Common Law Indemnification). The Orders dismissed all the claims against Arch: Counts I and II of the Complaint, and Count I of the Cross-Claim. The remaining claims are all asserted against Varney.

The adjudicated claims are not enmeshed with the unadjudicated claims. The two counts asserted against Arch in the Complaint, as well as Varney's Cross-Claim for indemnification, all hinge on interpretation of 24-A M.R.S. § 2009-A. The unadjudicated claims against Varney do not implicate 24-A M.R.S. § 2009-A. Moreover, the unadjudicated claims against Varney, for breach of contract and various torts, are not intertwined with the claims against Arch. Thus, the adjudicated claims are separable from the unadjudicated claims, and permit entry of final judgment on the adjudicated claims.

2. The Possibility That the Need for Review May be Mooted by Future Developments.

If an appeal is taken up upon entry of final judgment on the claims against Arch, Corinth Pellets will still have its case against Varney. Corinth Pellets has suggested it may seek a stay pending resolution of the anticipated appeal. Whether it seeks a stay or not is immaterial to the need for review. If Corinth Pellet's case against Varney is stayed, developments in the trial court

4

will cease until the appeal is decided. If Corinth Pellet's case against Varney is not stayed, proceedings in the trial court against Varney will proceed to resolution via dispositive motion or trial. Either way, a judgment for or against Varney will not moot the need for review. A judgment for Varney will mean that Corinth Pellets will await the outcome of the appeal in order to determine whether it has any grounds to pursue Arch. A judgment against Varney will mean that Varney will await the outcome of the appeal in order to determine whether it has grounds to seek indemnification from Arch. Hence, it is improbable that the need for review will be mooted by future developments in the trial court.

3. The Chance That the Same Issues Will Be Presented for Appeal More Than Once.

The remaining claims do not implicate 24-A M.R.S. § 2009-A. Accordingly, there is little chance the same issues will be presented to the Law Court more than once.

4. Whether Immediate Appeal Will Expedite or Delay Trial Court Proceedings.

It is possible that immediate appeal will delay the trial court's work, especially if Corinth Pellets seeks and is granted a stay pending the immediate appeal. However, any delay will be well worth the judicial economy, clarity and simplicity at the trial court level that would be obtained from learning on appeal whether Arch should remain in the case, participate in discovery, perhaps file another dispositive motion, and prepare for and participate in trial.

5. The Nature of the Legal Question Presented as Close or Near.

The question presented is a legal question of first impression. This Court determined the statute involved was unambiguous, and does not require notice absent cancellation, but Corinth Pellets, Varney, and the Intervenors all make reasonable arguments to the contrary. Further, if the statute is determined to be ambiguous, then that would require review of the legislative history,

5

which is confusing and contradictory. Accordingly, it is fair to say the legal question presented is close.

6. <u>The Economic Effects of Both the Appeal and Any Delays.</u>

The stakes in this case are extremely high. All the parties appear to want the appeal heard as soon as possible, and no party has objected based on the anticipated cost of the appeal. Although Corinth Pellets still has its claims against Varney, Corinth Pellets appears willing to wait for the appeal and in fact may seek a stay of the trial court proceedings. Varney also prefers to have the status of Arch clarified on appeal as soon as possible. The State, through the participation of the Intervenors, is interested for public policy purposes in having the appeal decided at the earliest date possible. Accordingly, there do not appear to be any adverse economic effects to the appeal and any resulting delays.

7. <u>Miscellaneous Factors.</u>

Interpretation of 24-A M.R.S. § 2009-A has significant public policy implications for the insurance market in Maine. The question of how to interpret 24-A M.R.S. § 2009-A is one of first impression, and is being monitored by parties who are not participants to the litigation. The question is especially important for Intervenor, the Superintendent of Insurance who is tasked with regulating the surplus lines insurance market in Maine.

**CONCLUSION**

For all the foregoing reasons, the Court determines there is no just reason for delay, and directs the entry of final judgment in favor of Arch on Counts I and II of the Complaint, and Count I of the Cross-Claim.

Pursuant to M.R. Civ. P. 79(a), the Clerk is instructed to incorporate this Order and Final Judgment by reference on the docket for this case.

6

So Ordered.

Dated:_____4/27/2020_____          _____/S_____

Michael A. Duddy
Judge, Business and Consumer Docket

**Corinth Pellets, LLC**                                          **BCD-CV-2019-37**


**v.**

**Arch Specialty Insurance Co.
and Varney Agency, Inc.**


**and**

**Maine State Attorney General
Mane Superintendent of Insurance**
          (Intervenors)




**Corinth Pellets, LLC**
          Counsel:                          Eric Wycoff, Esq.
                                            Kyle Noonan, Esq.
                                            Merrill's Wharf 587 Commercial St
                                            Portland, ME 04101




**Arch Specialty Insurance Co.**
          Counsel:                          Lauren Thomas, Esq.
                                            3415 Congress Street, Suite 201
                                            Portland, ME 04101




**Varney Agency, Inc.**
          Counsel:                          Brett Leland, Esq.
                                            One Portland Square,
                                            Portland, ME 04101

**Maine State Attorney General
Maine Superintendent of Ins.**
          Counsel:                          Tom Sturtevant, Jr., AAG.
                                            111 Sewall Street
                                            6 State House Station
                                            Augusta, ME 04333

STATE OF MAINE                          BUSINESS & CONSUMER DOCKET
CUMBERLAND, ss.                         DOCKET NO. BCD-CV-19-37


CORINTH PELLETS, LLC,                )
                                     )
          Plaintiff,                 )
                                     )
          v.                         )        ORDER GRANTING ARCH
                                     )        SPECIALTY INSURANCE CO.'s
ARCH SPECIALTY INSURANCE CO.,        )        MOTION TO DISMISS THE CROSS-
et al.,                              )        CLAIM
                                     )
          Defendants,                )
                                     )
and                                  )
                                     )
ATTORNEY GENERAL, STATE OF           )
MAINE, and MAINE                     )
SUPERINTENDENT OF INSURANCE,         )
                                     )
          Intervenors.               )


Pending before the Court is the Motion to Dismiss Cross-Claim of Varney Agency, Inc. by Defendant Arch Specialty Insurance Co. ("Arch"). In the companion Order issued in this case this same day, the Court determined that Arch did not fail to comply with the notice requirements of 24-A M.R.S. § 2009-A. For all the reasons set forth in the companion Order, the Court concludes that Arch did not violate 24-A M.R.S. 2009-A, and thus did not breach any obligation it owned to Varney Agency, Inc. Arch has no obligation to provide coverage for a fire that occurred on September 19, 2018, one day after expiration of the term of the surplus lines insurance policy issued by Arch. Varney Agency, Inc. is therefore not entitled to indemnification from Arch. Accordingly, the Court grants Arch's Motion to Dismiss the Cross-Claim, and judgment is entered in favor of Arch Specialty Insurance Co. on the Cross-Claim.

1

Pursuant to M.R. Civ. P. 79(a), the Clerk is instructed to incorporate this Order by reference on the docket for this case.

So Ordered.

Dated: January 23, 2020                              /s

Michael A. Duddy
Judge, Business and Consumer Docket

STATE OF MAINE                          BUSINESS & CONSUMER DOCKET
CUMBERLAND, ss.                         DOCKET NO. BCD-CV-19-37


CORINTH PELLETS, LLC,              )
                                   )
            Plaintiff,             )
                                   )
       v.                          )    ORDER GRANTING ARCH
                                   )    SPECIALTY INSURANCE CO.'s
ARCH SPECIALTY INSURANCE CO.,      )    MOTION TO DISMISS ALL COUNTS
et al.,                            )    ASSERTED AGAINST IT IN THE
                                   )    COMPLAINT
            Defendants,            )
                                   )
and                                )
                                   )
ATTORNEY GENERAL, STATE OF         )
MAINE, and MAINE                   )
SUPERINTENDENT OF INSURANCE,       )
                                   )
            Intervenors.           )


Pending before the Court is the Motion to Dismiss brought by Defendant Arch Specialty

Insurance Co. ("Arch"). The Motion addresses the question of whether Arch is obligated to

provide coverage for a catastrophic fire that occurred on September 19, 2018. Arch argues that it

has no such obligation, because the provision in the Surplus Lines Law governing cancellation and

nonrenewal of surplus lines coverage, 24-A M.R.S. § 2009-A, does not apply or is

unconstitutionally vague and unenforceable. Plaintiff Corinth Pellets, LLC ("Corinth Pellets") and

Intervenors oppose the Motion. For the reasons discussed below, the Court grants Arch's Motion

to Dismiss.

**STANDARD OF REVIEW**

In reviewing a motion to dismiss under Rule 12(b)(6), courts "consider the facts in the

complaint as if they were admitted." *Bonney v. Stephens Mem. Hosp.*, 2011 ME 46, ¶ 16, 17 A.3d

1

123. The complaint is viewed "in the light most favorable to the plaintiff to determine whether it sets forth elements of a cause of action or alleges facts that would entitle the plaintiff to relief pursuant to some legal theory." *Id*. (quoting *Saunders v. Tisher*, 2006 ME 94, ¶ 8, 902 A.2d 830). "Dismissal is warranted when it appears beyond a doubt that the plaintiff is not entitled to relief under any set of facts that he might prove in support of his claim." *Id*. "The legal sufficiency of a complaint challenged pursuant to M.R. Civ. P. 12(b)(6) is a question of law" and thus subject to de novo appellate review. *Marshall v. Town of Dexter*, 2015 ME 135, ¶ 2, 125 A.3d 1141.

## BACKGROUND

The operative pleading in this matter is the Second Amended Complaint dated June 11, 2019 (the "Complaint"). According to the Complaint, Corinth Pellets was formed to own and operate a wood pellet mill located in Corinth, Maine. (Pl.'s Compl. ¶ 1.) On September 19, 2018, Corinth Pellets' mill suffered a catastrophic fire which destroyed the mill's manufacturing capability and put the mill out of business for the foreseeable future. (Pl.'s Compl. ¶ 1.)

Corinth Pellets is the named insured under a surplus lines commercial property policy issued by Arch. (Pl.'s Compl. ¶ 2.) Arch issued the policy for the mill for the policy period of January 13, 2017 to January 13, 2018, and then issued three, three-month renewals of the policy with the last such renewal expiring on September 18, 2018—one day before the fire. (Pl.'s Compl. ¶ 33.) The policy covered property damage, business interruption, and extra expenses for damages arising out of a covered loss event. (Pl.'s Compl. ¶ 1.) Under the terms of the policy, the damages Corinth Pellets suffered as a result of the fire would be a covered loss event if the policy was still in effect on the date of the fire. (Pl.'s Compl. ¶ 33.)

2

For a number of years, Corinth Pellets retained the Varney Agency to act as its insurance agent. (Pl.'s Compl. ¶ 6.) On September 5, 2018, an employee of the Varney Agency sent an email to Corinth Pellets reporting the following:

> FYI…The current short-term policy for the building insurance is up on 9/18. The current insurance company can't extend past 9/18 as operations are running again. I have had various insurance companies quoting the past several weeks and should have quotes to review shortly. Once everything is back, we can decide which company to renew with.
>
> No need to do anything on your end… Just an FYI on what we have been doing behind the scene.

(Pl.'s Compl. ¶ 16.) This was the first time Corinth Pellets learned that Arch had elected not to renew the policy. (Pl.'s Compl. ¶ 16.) Corinth Pellets never received any written or other notice from Arch that Arch would not renew or continue the policy past September 18, 2018. (Pl.'s Compl. ¶¶ 33, 37.) The Varney Agency ultimately did not acquire property insurance for Corinth Pellets from any source to cover the mill property for the period beginning after September 18, 2018 (Pl.'s Compl. ¶ 25.)

Corinth Pellets provided timely notice to Arch of the September 19, 2018 fire at the pellet mill. (Pl.'s Compl. ¶ 45.) The fire caused approximately $15 million in damages to Corinth Pellets. (Pl.'s Compl. ¶ 31.) Arch denied coverage. (Pl.'s Compl. ¶ 46.)

## DISCUSSION

Surplus lines insurance carriers provide insurance to businesses and others with specialized risks. *County Forest Prods. v. Green Mountain Agency, Inc.*, 2000 ME 161, 758 A.2d 59. These insurers are governed by the Maine Surplus Lines Law, 24-A M.R.S. §§ 2001-2020 (2018) (the "Surplus Lines Law"). According to the Surplus Lines Law, entities desiring insurance coverage must first make diligent efforts to obtain coverage through standard insurers prior to obtaining

surplus lines coverage. 24-A M.R.S. § 2004(4). Surplus lines carriers are only authorized to insure

risks in Maine if they work through licensed surplus lines producers, specially authorized to place

coverage with non-admitted insurers. 24-A M.R.S. §§ 2003(2) & 2012. Surplus lines insurance

carriers, such as Arch, are "non-admitted insurers", and are generally "not licensed to engage in

business of insurance in [the] state". 24-A M.R.S. § 2003(9). This process provides businesses that

have long loss records, or unusual business risks, access to the less regulated surplus lines market.

Section 2009-A of the Surplus Lines Law specifically governs the cancellation and

nonrenewal of surplus lines policies, and provides in its entirety:

> **1. Notice.** Cancellation and nonrenewal by an insurer of surplus lines coverage subject to this chapter shall not be effective unless received by the named insured at least 14 days prior to the effective date of cancellation or, when the cancellation is for nonpayment of premium, at least 10 days prior to the effective date of cancellation. A postal service certificate of mailing to the named insured at the insured's last known address shall be conclusive proof of receipt on the 5th calendar day after mailing.
>
> **2. Exemption.** Cancellation and nonrenewal by an insurer of surplus lines coverage subject to this chapter shall not be subject to sections 2908 and 3007.

24-A M.R.S. § 2009-A. In its motion to dismiss, Arch contends that Section 2009-A requires both

cancellation and nonrenewal in order for the statute to apply. Since there was no cancellation in

this case—only nonrenewal—Arch maintains Section 2009-A doesn't apply and Arch was not

obligated to provide Corinth Pellets with notice of nonrenewal. Conversely, Corinth Pellets and

the Intervenors insist cancellation *or* nonrenewal is sufficient to trigger the statute's notice

requirement, and thus Section 2009-A required Arch to send Corinth Pellets notice of nonrenewal.

In order to determine if Section 2009-A applies only when there has been cancellation

accompanied by nonrenewal, or also applies when there has been nonrenewal but no cancellation,

the Court must interpret the statute to effectuate the legislative intent. *Wawenock, LLC v. DOT*,

4

2018 ME 83, ¶ 7, 187 A.3d 609. "The first and best indicator of legislative intent is the plain language of the statute itself." *Id.; see also Dickau v. Vt. Mut. Ins. Co.*, 2014 ME 158, ¶ 19, 107 A.3d 621 (the Court looks first to the plain language). If the statute is unambiguous, the Court must interpret the statute according to its plain language, provided the result is not illogical or absurd. *Wawenock*, 2018 ME 83, ¶ 7. If a statute can reasonably be interpreted in more than one way and comport with the actual language of the statute, an ambiguity exists. *Id.* Only if the statute is ambiguous does the Court consider other indicia of legislative intent, such as legislative history. *In re Child of Nicholas P.*, 2019 ME 152, ¶ 32, 218 A.3d 247.

A plain language interpretation is not necessarily a literal interpretation. *Dickau*, 2014 ME 158, ¶ 20. A variety of principles guide the Court in determining the meaning and intent of statutes within the context of a plain language analysis. *Id.* Among the principles courts consider are the subject matter and purposes of the statute, as well as the practical consequences of different interpretations. *Id.* ¶ 21. Further, the Court may reject any construction contrary to the public interest, or that creates absurd, unreasonable, illogical, inconsistent, or anomalous results if an alternative interpretation avoids such results. *Doe v. Reg'l Sch. Unit 26*, 2014 ME 11, ¶ 15, 86 A.3d 600. The Court will give due weight to the entirety of a statute including design, structure, purpose, and aggregate language, while rejecting interpretations that render some language mere surplusage. *In re Hart*, 328 F.3d, 45, 48 (1st Cir. 2003); *Cent. Me. Power Co. v. Devereux Marine Inc.*, 2013 ME 37, ¶ 8, 68 A.3d 24. In specialized areas such as insurance, courts honor the connotations and recognized meanings of terms-of-art. *Dubois v. Madison Paper Co.,* 2002 ME 1, ¶ 13, 795 A.2d 696.

In this case, the plain language of Section 2009-A is unambiguous. The first sentence begins with the following phrase: "Cancellation and nonrenewal . . . ." Each of the words in this

5

phrase are easily understood, even though "cancellation" is undefined in the Surplus Lines Law, as is "nonrenewal." In the absence of legislative definitions, "we afford terms their plain, common, and ordinary meaning, such as people of common intelligence would usually ascribe to them." *Dickau,* 2014 ME 158, ¶¶ 21-22. Generally, in an insurance law context, cancellation "refers to the termination of an insurance policy by an act of either, or both parties to it, prior to the ending of the policy period." *Cancellation*, Black's Law Dictionary (6th Ed. 1990) at 206. Nonrenewal refers to "a failure to renew something, such as a lease or an insurance policy." *Nonrenewal*, Black's Law Dictionary (11th Ed. 2019) at 1270. According to the New Oxford American Dictionary, the word "and" is defined as a conjunction "used to connect words of the same part of speech, clauses, or sentences that are to be taken jointly." *And*, New Oxford American Dictionary (3rd Ed. 2010). Taken together in context, the phrase "cancellation and nonrenewal" refers to termination of a surplus lines insurance policy prior to the end of the policy period, with a failure to renew the policy.

The remainder of the first sentence provides that cancellation and nonrenewal "shall not be effective unless received by the named insured at least 14 days prior to the effective date of the cancellation or, when the cancellation is for nonpayment of a premium, at least 10 days prior to the effective date of cancellation…" 24-A M.R.S. § 2009-A. This portion of the sentence is also easily understood; it requires notice only for cancellation, and is silent with regard to nonrenewal. The lack of reference to nonrenewal makes sense, because the applicable triggering event is cancellation. There is no need to specify notice for nonrenewal, since any such notice requirement would be rendered unnecessary due to the notice required for the prerequisite—cancellation. In other words, cancellation is the *sine qui non*. If there is no cancellation, Section 2009-A does not apply.

6

Based on a plain reading of the statute, therefore, Section 2009-A applies only when there is cancellation accompanied by nonrenewal. In this case, Arch did not cancel the surplus lines policy it issued to Corinth Pellets. Rather, as explained in the email sent by the Varney Agency to Corinth Pellets thirteen days before the end of the policy term, Arch decided it would not renew the policy at the end of its term. Section 2009-A's notice requirement does not apply to Arch's nonrenewal, and thus the policy's nonrenewal became effective on September 18, 2018—one day before the fire.

Corinth Pellets and Intervenors argue that interpreting Section 2009-A in this fashion results in an absurdity, because cancellation and nonrenewal are mutually exclusive concepts.[1] Corinth Pellets builds its argument around the definitions of cancellation and nonrenewal contained in 24-A M.R.S. §§ 2908 & 3007. According to 24-A M.R.S. § 2908(1)(A), cancellation is defined as "the termination of a policy at a date other than its expiration date." *See also* 24-A M.R.S. § 3007(1)(A). This definition is consistent with the common understanding of "cancellation" in the insurance context. However, according to 24-A M.R.S. § 2908(1)(D), nonrenewal is defined as "termination of a policy at its expiration date." *See also* 24-A M.R.S. § 3007(1)(D). This is a narrower definition than the common understanding of "nonrenewal" in the insurance context. Under these definitions, cancellation and nonrenewal cannot occur together, because by definition they occur at different points in time: cancellation before a policy's expiration date, and nonrenewal at its expiration date. However, the Surplus Lines Law specifies that Sections 2908 and 3007 don't apply to surplus lines polices: "Cancellation and nonrenewal by an insurer of surplus lines coverage subject to this chapter shall not be subject to sections 2908 and 3007." 24-A M.R.S. § 2009-A(2); *see also* 24-A M.R.S. §§ 2908(9) & 3007(9) (reciprocal

---

[1] As to the Intervenors' arguments, the Court only defers to an agency's interpretation of a statute if the statute is ambiguous. *See Wawenock*, *LLC v. DOT*, 2018 ME 83, ¶ 22 n.10, 187 A.3d 609.

7

provisions specifying that Sections 2908 and 3007 do not apply to surplus lines contracts). The Court cannot apply definitions from the two specific sections of the Insurance Code which the Legislature has singled out and expressly mandated do not apply.

Instead, the Court must use the more general understandings of cancellation and nonrenewal in the insurance context, which are flexible enough to conceptualize the two events occurring together. For example, in response to a substantial change in the risk, a surplus lines carrier might cancel a surplus lines policy, and offer to renew the policy on different terms and pricing. Alternatively, the carrier could cancel and decline to offer renewal terms. In the latter scenario, which involves cancellation and nonrenewal, Section 2009-A requires the carrier to provide the named insured with notice at least fourteen days prior to the effective date of the cancellation. Hence, cancellation and nonrenewal are not mutually exclusive concepts, and the resulting interpretation is not an absurdity.

Corinth Pellets and Intervenors argue that under the applicable rules of construction, the Court should interpret "and" and "or" as interchangeable.[2] *See* 1 M.R.S. § 71(2). In other words, according to Corinth Pellets and Intervenors, "cancellation and nonrenewal" should be read as "cancellation or nonrenewal." It is true that when interpreting a Maine statute the Court is permitted to interpret "and" as convertible with "or," but only "as the sense of a statute may require." 1 M.R.S. § 71(2). Here, for the reasons expressed above, the sense of the statute does not require such convertibility. Further, interpreting "and" to mean "or" in Section 2009-A would lead to more difficult interpretive challenges. First, the Court would need to read into the statute a notice requirement for nonrenewal, where none currently exists. Second, the Court would need to specify the amount of notice for nonrenewal, where no amount is currently specified. How

_____

[2] In contrast to the word "and," the word "or" is a conjunction "used to link alternatives." *Or*, New Oxford American Dictionary (3rd Ed. 2010).

8

much notice should the Court determine appropriate?  Ten days?  Fourteen days?  Thirty days?  Corinth Pellets and Intervenors argue the Court should pick fourteen days, and read the statute as requiring that notice be received by the insured "at least 14 days prior to the effective date of cancellation <u>or nonrenewal</u> . . . ."  Corinth Pellets and Intervenors argue the Court is permitted to interpret the statute in this fashion in order to avoid an absurd result.  But determining the appropriate amount of notice is inherently a legislative function, and where the Insurance Code does require notice of nonrenewal, the amount of notice required is usually different than the amount of notice required for cancellation. *Compare* 24-A M.R.S. § 2915 with § 2917, and 24-A M.R.S. § 3050 with § 3015.  Moreover, the interpretation urged by Corinth Pellets and Intervenors is unnecessary to avoid an absurd result, and would interfere with the plain meaning of the enactment.

Finally, Corinth Pellets and Intervenors contend that the legislative history of Section 2009-A indicates that statute was intended to require notice for nonrenewal, even in the absence of cancellation.  However, the Court only considers other indicia of legislative intent, such as legislative history, if the statute is ambiguous. *Scamman v. Shaw's Supermarkets, Inc.*, 2017 ME 41, ¶ 14, 157 A.3d 223.  Here, the statute is unambiguous, and so the Court has no need to look beyond the plain language.  The arguments based on legislative history are thus unavailing.[3]

## CONCLUSION

For all the foregoing reasons,[4] Arch's Motion to Dismiss is GRANTED.  Judgment is entered in favor of Arch Specialty Insurance Co. on all counts asserted against it in the Complaint.

[3] Of course, in considering the arguments of the parties, the Court reviewed those portions of the legislative history provided by the parties, and notes that in contrast to the plain language of the statute, the legislative history of Section 2009-A appears to be confusing and contradictory. *See Wawenock*, 2018 ME 83, ¶ 12 (although a plain language reading of the statute resolved the issue in dispute, the Court commented on the statute's legislative history because of the parties' focus thereon.)

[4] Because the Court has determined that Arch did not violate Section 2009-A, the Court has no reason to address Arch's contention that the statute is unconstitutionally vague and thus void.

9

Pursuant to M.R. Civ. P. 79(a), the Clerk is instructed to incorporate this Order by reference on the docket for this case.

So Ordered.


Dated: January 23, 2020          __/s_____
                                 Michael A. Duddy
                                 Judge, Business and Consumer Docket